Judge King, Judge Southwick, Judge Haynes, thank you for the opportunity. It's a privilege to be here. My name is Ahad Khan. I represent the appellant, Diana Loayza. In order to address her concerns, I'm going to make one headline point and then hand it right back to you. Diana Loayza was terminated when she was eight months pregnant for purchasing supervisor-approved bakery items for her baby shower. Based on this record, a reasonable fact-finder could infer that her termination was because of her pregnancy. Therefore, summary judgment was inappropriate. I welcome the Court's questions. Why don't you proceed with your argument and we'll come up with some questions. Yes, Your Honor. I'll start with the disputed material facts. The first one is the fact of supervisor approval. The first line in Appellee's brief at page three states that this purchase was not supervisor-approved. That fact is in dispute. Michelle Seller, she testified that she provided that approval. And in the case law of this court, particularly Hare v. LSU, Heinsohn v. Karabin and Shaw, when you have supervisor approval for what would otherwise be a violation of policy, that could allow a fact-finder to infer pretext. I think most of those cases may not be supervisor approval. There may be supervisor insistence. Is that a fair distinction? It may not make a difference, but I think that's what those cases are. It's one thing to be commanded by your supervisor to go steal a loaf of bread. It's something else to say, it's all right with me, if you will. Unfair analogy, but let me ask you about this supervisory position. It seems to me that the email we have from Ms. Sellers, contemporaneous with the events, refers to the California practice. And the only way she would know about the California practice would be from your client. So it seems to me that that email really means that it's consistent with what Whole Foods is saying, that it is your client who told her this is the way it works. Then a year later, she signs something else that really is very favorable to your client, it seems to me. So help me with that distinction. Isn't that initial email really not very helpful to you? Well, Judge, not only did Michelle Sellers make that contention a year later, she made that contention in the email. Well, the decision was made at the time based on what Whole Foods knew, and that's why I think it's important to distinguish the two. The email, look just at that email. And when the decision was made, I'm not altogether sure that we have supervisor approval for what happened. Michelle Sellers testified that not only did Diana Lawazen inform her that this practice was conducted in California, she observed based on her own observations that items were given to employees for free. She was the big report person. She gave permission. I think at least there's a fact issue about whether she had that approval. A fact issue should be decided by a fact finder. What's your explanation for how this was rung up? Is that totally the cashier putting in $211 charges? Or what is the either genuine dispute or undisputed evidence on why it was done that way? I think there is a genuine dispute because Whole Foods' position is, and it's in her determination form, that Lawazen directed Bona to make this purchase in the way he did. That's not entirely true. The only contribution Lawazen made was once the price was decided, she said that there's a special PLU that you can ring up, $1, in order to reach that final price of $211. Lawazen at all times has stated that it was in the cost price calculation on how to get there. She had nothing to do with that. That point is squarely in dispute. There's also a disputed material fact here in regards to Brandon Tupper. There's a lot of testimony in the record about Tupper's management style. In particular, he made a few comments about Lawazen's pregnancy. One was regarding the length of her leave, expressing frustration that she wasn't taking as short of a leave as another employee, four months versus four weeks. In addition, he expressed frustration on one occasion when she was to leave work early because of sickness due to her pregnancy. Those comments alone could be used by a fact finder to infer pretext. And although they may be stray in the sense that they're not direct evidence, they're still, as a court held in Godot, they're still part of the overall evidence. Well, why is it discrimination to be concerned about losing somebody for several months? Well, there's been cases in which that's exactly what the court decided. I mean, it's different from saying, oh, you shouldn't be pregnant or something like that. That would be horrible. But wanting that person to be with them and being sad to miss them, why is that discriminatory? Well, Judge Haynes, pregnancy is unique in the context of Title VII because it's not unlike gender or race. It's not a more permanent condition. Oh, I'm well aware that it's not permanent to be pregnant. And for that reason, the PDA, Pregnancy Discrimination Act, not only prohibits discrimination against individuals who are pregnant, but for pregnancy-related conditions, including leave. And certainly, maternity leave is inextricably linked. Yeah, but what you're saying he said is not necessarily nasty. It's just concerning for him to get what he needs to get done. I think I understand your point in that he's concerned about coverage. Yeah, that's what I'm asking about. Why is that discriminatory rather than trying to fix the building or the whole foods? You know what I'm saying? I mean, you seem to say that's discriminatory, but I'm just questioning why that is. Again, I very much do not want people to discriminate against pregnant people or anyone else in the proper arenas of do not discriminate. But I'm just asking. It's discriminatory, Your Honor, because her leave in this case was solely because of her pregnancy. She was to take maternity leave nine days after she was terminated. Had she not been pregnant, she would not have been taking the leave. Had she not been taking the leave, Tupper would not have had that frustration. It's a direct link. Well, but this had to do with the money situation. And I think you're aware that even if the reason to fire someone is stupid, as long as it's not discriminatory, it's not something we have to send back, right? That's right, Judge. But the district court in this case made this ruling solely on the issue of pretext, i.e. is Whole Foods' articulated reason unworthy of credence? We've introduced sufficient evidence, I believe, that it is unworthy of credence, certainly that a fact finder could find it. So we're asking that a fact finder be allowed to make that determination. In addition, Judge, to the Tupper's statements, in addition to the supervisor approval, the fact that she's eight months pregnant, she gave birth two weeks after she was fired. No, this is not a retaliation case, but temporal proximity, I think, is also some evidence that it had to do with her pregnancy. Certainly, Tupper knew she was pregnant, knew that she was about to go on leave. The bakery items in question were being purchased for her babysitting. And a key issue in addition to that is the level of intent here. If you look at the termination form, there's multiple boxes to check for what policy was  One of those boxes is major infractions theft. That box was not checked. What was checked was major infractions, which incorporates a whole host of policies. But in the box that describes the particulars of her termination, it says that she intentionally labeled, she intentionally priced incorrectly. Because she did not direct Bona to come up with that price of $211, because there's no intent here, there's no evidence of intent here, it was clearly a mistake in my view. And she did not know that it was a violation of policy. Otherwise, she would not have done it and jeopardized her job. Because of that, I don't think that Whole Foods' own explanation of the termination, intentional ringing up of prices, that's the quote from the policy, can be met. There's certainly a fact issue on whether it was intentional. And that mens rea component, the inference of whether Loaza possessed the intent to violate this policy and effectively steal from Whole Foods, just like the intent to discriminate, it's a thought process that I think should be left with the jury in this case. All right. There's another argument I've made in the brief about McDonnell Douglas, which this court is very familiar with. The McDonnell Douglas is not only a textual in terms of Title VII, there's no support for it in the text of Title VII, there's no support for it in the legislative history of Title VII. In fact, the legislative history says that these cases are to be analyzed like any other case under federal law, and there's no support for it in the purpose of Title VII. But not only that, it's not just inconsistent with Rule 56, it's contradictory to Rule 56 in that there's three steps of the framework. The burden in Steps 1 and 3 lies with the employee, the non-moving employee. The burden in Step 2 is really just perfunctory. It's not even a burden of proof. It's a burden of production. It's not a burden of persuasion. The employer just has to come up with some non-discriminatory reason for taking its action. In all the cases I've seen, I've never seen an employer fail at Step 2 to come up with some reason. Therefore, effectively, the entire burden on summary judgment under McDonnell-Douglas is on the non-moving employee. Now, Justice Thomas said something important in its concurrence in Ames v. Ohio, in that the Supreme Court has never required that lower courts use it. That's true. The one time it came in from the Supreme Court, they determined it's not necessary to use. I'm well aware of this circuit's precedent. In the cases I see, it says these cases involving circumstantial evidence are analyzed under McDonnell-Douglas. I'm not sure if that equates to must be analyzed under McDonnell-Douglas. And I see one interpretation here that this court wouldn't be in the right position to side with me there, that it would have to be an en banc Fifth Circuit. But I see another interpretation as well, that because these circumstantial cases are analyzed under this evidentiary framework, it's not intended to replace the elements of the Title VII discrimination claim, that not analyzing it under that framework, but consistent with the text of Title VII and Rule 56, would not be a violation of this court's precedent. Certainly, I don't think we necessarily even get there, because I think that there's sufficient evidence of pretext. Well, maybe speaking for my colleagues, but changing the law without the en banc court is not something you need to be arguing. Understood, Your Honor. Another point from the case law, and it addresses a question you had earlier, Judge Haynes. As far as these discriminatory comments, there are two cases, Lackson v. Gap, EEOC versus Ryan's point, in which a supervisor expressing concern or frustration over an employee's length of leave, the same coverage issues involved in this case, could be used by a reasonable fact finder to infer discriminatory animus. They also deploy that two-part test. That test is, do the statements invoke discriminatory animus? And then second, are they made by either a decision maker or someone who has leverage over the decision maker? Tupper, in this case, I don't think there's any question, at least had leverage over the decision maker. As indicated by the emails, that can be found in the record at 185. Also, there's a case, Turner v. Kansas City Railway Company, that says that when a lesser form of discipline, lesser than termination, may have been used, that there ought to be some explanation for why that wasn't used. For example, a suspension instead of a termination, or a final warning instead of a termination. And absent such an explanation, that alone could be used by a jury to infer pretext. Here, we're talking about the difference between retail price and cost price. It's about 230 bucks. The parent company of Whole Foods has a market cap of $2 trillion. I don't understand why they didn't just take it out of Lawaza's next paycheck, or put her on a warning, get that, recoup that money, resolve the issue of theft if there were any, and allow her to keep her job as she pleaded for in her statement. I think that alone could be used in argument to a jury to side with Lawaza. Finally, the manipulation of the statement, the initial written statement of Lawaza by Tupper is critical, because it didn't just address some superfluous point, it addressed the point where she's, it goes right to intent, where she's describing what her understanding of the policy was. She originally wrote, I understand that I have to pay for anything that I purchase. The adding of the word retail completely flips that, and that's critical to the issue of intent. Do we have any evidence of how that statement itself ends up being used by Whole Foods in decision making, or is it even relevant to that decision? Well, Judge, I think that would have to be fleshed out through the testimony and be decided by a fact finder. I'm asking, where are we now? Is there some sort of document that would indicate that statement was used? Well, we know the statement, the overall statement was considered, whether that one particular word or one particular sentence was used. I don't have anything directly to that, but when you look at the termination form, it says intent, that goes right to the heart of Lawaza's intent. There's no statement that goes more to the heart of intent than that line in that statement. All right, counsel. May it please the court. Kelly Edwards, counsel for the Apolli Whole Foods Market. The record before this court supports an affirmation of the district court's grant of summary judgment for three primary reasons, each of which I will address in turn. First, Ms. Lawaza, the appellant, failed to identify a replacement outside of her protected class or any other similarly situated comparator as required to satisfy her initial burden to demonstrate or present a prima facie case of pregnancy discrimination. Second, the district court properly found that the evidence Lawaza presented was insufficient to raise a genuine issue of material fact that Whole Foods' stated rationale for her termination was a pretext for pregnancy discrimination. And third, there is no indication that the district court incorrectly applied evidentiary standards in considering Whole Foods' motion for summary judgment. As the record reflects, Whole Foods terminated Ms. Lawaza's employment after she admitted that she had directed a subordinate employee to misprice over 200 bakery items, which she then purchased from Whole Foods at an even deeper discount for her personal use. It was after that subordinate employee reported the improper transaction at the urging of another employee who had observed the transaction, Whole Foods conducted an extensive investigation into the incident and into Ms. Lawaza's conduct. Ms. Lawaza acknowledged that her actions, she ultimately acknowledged that her actions violated store procedures and admitted that she made a mistake in using her position as the bakery team leader to purchase over $500 worth of items by paying only $158.28, which was an amount that ended up being at a loss to Whole Foods. Specifically, the investigation that Whole Foods Human Resources Department conducted concluded and determined that Lawaza's conduct violated at least three company policies. The Whole Foods theft policy, which prohibits intentionally underwringing items or discounting them without authorization. Its policy on team member purchases, which specifically states that employees may not price their own product. And the Whole Foods discount policy, which states that any employee discount must be based off the full price of the item. And also by Whole Foods policy, each of these violations is grounds for immediate termination of employment. But as you know, Lawaza argues instead that despite these violations, her termination was actually because of her pregnancy. We believe the district court properly found that Lawaza had insufficient evidence to support that claim of pregnancy discrimination. And so we ask that the district court's grant of summary judgment be affirmed. As to the first point, the district court's judgment in Whole Foods favor should be affirmed because Lawaza failed to present evidence that she was replaced by a non-pregnant employee or was treated less favorably than non-pregnant employees. I find this argument a bit difficult. It seems to me so long as her replacement had not said she was pregnant, was not seen yet to be pregnant, that somehow she's supposed to prove the negative. I mean, it's one of the few things maybe in this particular area of discrimination that is not clearly known from appearance. Is there any case law to support that you need to be able to get the medical records of the person you replaced by to make sure she's not pregnant? What Lawaza is responsible for doing, what her burden is at the time of case is to present evidence that she was treated differently than someone outside of her protected class. And the fact of the matter is she didn't elicit evidence on that point. She didn't elicit evidence about whether or not her alleged comparator was or was not pregnant. So it's not as if she's being asked to prove a negative. She's just asked to elicit evidence about what Whole Foods knew or didn't know in that situation. It very well may be that Whole Foods did know the answer to that question, but she did not sufficiently elicit that evidence as part of discovery and therefore did not meet her burden to present that to the court in making this initial showing that she was treated differently from people outside of her protected class or was replaced by someone who was not pregnant. And because she's failed to do that, she cannot meet her initial burden of demonstrating that prima facie case of pregnancy discrimination. She also, under the McDonnell-Douglas framework, cannot satisfy the prima facie case of pregnancy discrimination because she can't show that she was treated less favorably than similarly situated employees who were not pregnant. Again, she alleges she was replaced by a woman named Allegra Aviles, but she did not elicit that discovery or that evidence about Ms. Aviles' pregnancy status. Her only evidence of it is her own self-serving affirmation or declaration that Ms. Aviles had never been pregnant. Isn't there some evidence that there was an admission or at least other assertion by Whole Foods that they had no personal knowledge of whether the replacement person was pregnant? Isn't that an indication they replaced her with someone they did not know to be pregnant? What Ms. Loaza presents on that point is a request for admission, asking Whole Foods to admit or deny that Ms. Aviles was pregnant. And the response was that Whole Foods had no record of whether or not Ms. Loaza was pregnant. So essentially, no evidence on that point. But what Loaza didn't do was take some sort of affirmative statement from Whole Foods that it did not have any knowledge that she was pregnant. Essentially, it was essentially just a denial of a request to admit that it knew she was pregnant. Rather than evidence that it knew that she was not. There's an assertion there.  that they replaced her with somebody they did not know was pregnant. I don't think the record evidence supports that one way or the other. I'll go record evidence as the effect of the admission. Is there record evidence? The record evidence just is simply silent to that point. And I think that because it's Loaza's burden to present that. But does it matter that they didn't ask the lady they replaced whether she was pregnant? I don't think that Whole Foods did that. In other words, even if they didn't know if she was pregnant, if they didn't want somebody to be pregnant, wouldn't they need to ask her? And if they didn't ask her, isn't that showing they don't care? I'm not sure how to answer that exactly, Judge Haynes. Because I think that would be speculative on our part to know what their intent was in asking or not. I think the fact of the matter is Ms. Loaza did not present evidence that there was a comparator outside her protected class. One way or the other, the record's just silent. Or that they weren't asking. Correct. She also, Loaza, does not identify any similarly situated employees who were treated more favorably, who were not pregnant, but treated more favorably under similar circumstances. That is, employees committing or accused of committing similar policy violations. So she alleges that her supervisor gave away certain items to employees. But even if that were true, which I think the record is devoid of supportive evidence on that point, but even if it were true, the law is clear that a supervisor cannot be a similarly situated employee as a matter of law. And also, the conduct she refers to occurs in very different circumstances. And the law is also clear that in different circumstances under different facts, possibly involving different policies, that's also not a similarly situated employee for purposes of this analysis. And for those reasons, she cannot meet her, we believe she cannot meet her prima facie case of pregnancy discrimination. But even if this court were to find that there was sufficient evidence on that point, summary judgment should still be affirmed because the district court properly found that Ms. Loaza presented insufficient evidence that Whole Foods stated reason for her termination was a pretext for pregnancy discrimination. Instead, the district court properly found that Loaza failed to present evidence sufficient to create a genuine issue of material fact as to Whole Foods discriminatory intent. We submit that Loaza cannot now on appeal argue for the first time that a mixed motive framework should apply to her case because she never raised it before in the district court and therefore has waived that argument on appeal. Loaza specifically argued her case before the district court as a pretext case, as well as before this court. And a traditional pretext case requires that the plaintiff present evidence that the employer stated reason for the termination is not true or not worthy of credence, as opposed to a mixed motive case, which requires the plaintiff present evidence that the employer stated reason, while true, is in fact motivated by another discriminatory factor. I want to address the effect of the seller's affidavit issued a year later, signed a year later, at least later. She says in it, not only that she gave permission, but that she informed Tupper and somebody else that I had given the permission. Doesn't that create a fact issue that in front of the decision maker was an explanation of innocence on the part of the plaintiff? If you look at Ms. Seller's email, which is what Whole Foods considered at the time that it made its decision to terminate her, her email says, I did give her at least initial permission when she came to me and explained that she had bought items at cost price previously in the California store. But I, of course, expected to be there to oversee the transaction. But the affidavit, which was before the court, said I also told Tupper that I had approved it. So it's not just the email. This is evidence. It's before the decision was made. Maybe it doesn't quite nail it down that it was before. So maybe that's a loose end, that I told Tupper that I had approved this. Even if that were true, and we accept that fact as true, that Whole Foods knew at the time. You don't have to accept it as true. You just have to accept it as creating a genuine issue of disputed fact. Well, even viewing the facts in the light most favorable to Ms. Loaza, even if we assume that Whole Foods did know that Sellers had given preliminary approval for the transaction, that wasn't the only violation that the company determined that Ms. Loaza had committed. Because even if she had had that preliminary approval, first of all, Ms. Sellers was no longer employed at the time of the act. And so therefore, she was an employee at the time that she told Tupper, according to this affidavit. According to the affidavit, you're correct. That's all we're worried with right now. But she was not, I think it's undisputed, she was not an employee, was not in any kind of managerial position at the time that the act actually occurred. So at the time the act actually occurred, Ms. Loaza did not have approval from anyone in management to purchase items in the manner that she did. And even based on Ms. Sellers' statement, all the approval was was to purchase the items, quote, at cost, which isn't even a term that exists in the Whole Foods system. It certainly wasn't approval to price the items specifically, to use a generalized code for a vague dollar amount to purchase the items as Ms. Loaza did. And certainly not to then apply her employee discount on top of that, meaning that she was actually purchasing the items at a cost that resulted in a financial loss to the company. So there's a lot more that the company considered in determining that Ms. Loaza violated policy under these facts. But there's more to her evidence too, doesn't she? Isn't there evidence that she was not actually having the checker, whoever actually rang it up, do it that way, that the checker did that on his, I think it is, own initiative? So that's, again, a fact for Spear. Her testimony is that she was in a rush to check out the items and that the person checking her out asked her if she wanted to apply the employee discount and without thinking, she said yes. It doesn't change the fact that she knowingly allowed that employee discount to be applied on top of already a discounted purchase, which is directly contrary to Whole Foods policy, which specifically states that the employee discount is only to be utilized on full-priced merchandise, certainly not things that are bought at cost to the store, which means that then, in actuality, Ms. Loaza's purchase resulted in a 25% loss to the company rather than simply a net zero. And that's the issue with the way she conducted that transaction. I also want to address the remarks that Ms. Loaza's counsel has identified that he believes present evidence of discriminatory intent. I think the context of the record evidence reflects a difference than what Ms. Loaza argues or what her counsel represents. First, she claims that Tupper, her supervisor, allegedly inquired about the length of her maternity leave, and she says she interpreted that herself as frustration with her pregnancy. But actually, that was her subjective interpretation of that question about how long her leave would be. And in actuality, in the record, there's no objective evidence that Tupper made a negative comment about her actual pregnancy. Rather, as you identify, Judge Haynes, he commented on the length of her leave or questioned her on the length of her leave, which is different. And even Loaza says that he raised that because he was concerned about the team being in good shape while she was out. There is case law that is clear that a supervisor's inquiry about the duration of an employee's leave does not equate to or demonstrate a discriminatory animus towards the employee's pregnancy. That it's very different. And one such case is Wallace versus Methodist Hospital, which this court decided in 2001. Loaza also claims that Tupper threatened to discipline her because she had to leave work early once because she was sick. And she said that she assumed that Tupper assumed that it was because of her pregnancy. But the evidence in the record shows that Loaza's absence in the circumstances was entirely unrelated to her pregnancy. That it was actually for COVID-19 symptoms. And so the context of those comments matters. And under these circumstances, neither of these comments from Tupper are evidence of a discriminatory animus towards her pregnancy. She also argues that other employees engaged in similar conduct without discipline or termination. But as we've discussed, she's failed to identify any employee who was allowed to purchase items below retail price in the manner in which she did, who was not disciplined or terminated. And I want to address the claim that Tupper tried to manipulate the investigation by asking her to insert a word into her written statement that was taken. And he says that that was Tupper's effort to manipulate the investigation, which shows a discriminatory intent on his part. This argument is a red herring, because whether or not the word retail price was the threshold or put into the statement, doesn't change the fact that the manner in which Loaza made the purchase of bakery items violated several different store policies. Again, as we've mentioned, she ultimately paid below cost price for the bakery items, which meant that she was taking them at a financial loss to the company. And the evidence shows that it was Whole Foods Human Resources Department who conducted the investigation and relied on several pieces of evidence and several statements from different employees in reaching its conclusion, including a second clarifying statement from Ms. Loaza that she submitted in an effort to correct her first statement, as well as the statements that other employees gave about the situation. The fact that Loaza's corrected statement was considered bellies any argument that the investigation was somehow manipulated by the insertion of one word into her original statement. In actuality, what the undisputed record of it shows is that Tupper had very little involvement in the investigation and that it was human resources who led the investigation, determined the policy violations, and ultimately recommended termination. And Loaza's argument that simply because Tupper could have given her a warning instead of termination, that somehow this is evidence of discriminatory intent ignores the policy language itself, which mandates that termination is required for employees found to have violated the theft policy. I also want to address the timing issue that Loaza claims that the timing of her termination, just a couple of weeks before her leave was to begin, somehow suggests discriminatory animus. The fact of the matter is Loaza was in charge of that timing because she is the one who made those purchases when she did for the benefit of her baby shower. And so nothing about that timing suggests some sort of discriminatory intent. Because Loaza's argument is we believe that the facts or the arguments, the pieces of evidence that Loaza has presented fail to raise a fact issue of discriminatory animus, that the district court correctly held that Loaza failed to present evidence sufficient to rebut Whole Foods' legitimate non-discriminatory reason for her termination and properly granted summary judgment. And we'd ask this court to affirm for those reasons. All right, counsel. Thank you. Your Honor, I think there's, in examining the cases in which summary judgment is reversed on a pretext issue, there's two patterns that emerge to me. One is when the district court does not properly credit the employee's evidence, the non-movance evidence, as admonished by the Supreme Court in Tolan v. Cotton. And then the second is when the case, the pretext analysis is taken piecemeal and not in its totality. The cases for that are DeBassi and Donaldson. What happens in that latter scenario is that the plaintiff puts together puzzle pieces that paint a picture of pretext. And then the employer comes and says, this takes a puzzle piece out of the puzzle and says, this doesn't prove pretext. This doesn't get you there. This alone isn't enough. But the puzzle pieces aren't examined individually. They fit together in the totality of the circumstances, the big picture that DeBassi and Donaldson refer to. Let's touch on some of the points that were made in the previous argument. First, the mixed motive. Smith v. Xerox says that an employee doesn't have to make an election at this stage, whether they're going to pursue a pretext or a mixed motive analysis. But even if that were the requirement, Loaza's met that requirement in ROA 266 in her summary judgment. She cites explicitly the motivating factor standard. And I also understand that Title VII was amended in 1991 to codify the mixed motive or motivating factor standard. The second issue is this issue of ovulas being a proper comparator. This gets right to the heart of where the burden lies on summary judgment. This is a trend, just so you guys may not be aware of this, what's going on on the ground. This is a trend that's happening in discovering these employment cases. Whenever there's a comparator or replacement, they deny knowing that comparators or replacements, race or gender, for example, we can't say for sure. And that's kind of what happened here. But my understanding is it's still the burden on summary judgment of the defendant to show there's no fact issue. And if there is a fact issue on whether ovulus is pregnant or not, then that's a genuine issue of material fact. Well, then you have to show it or convince the court in order for the summary judgment to deny, but the fact issue has to be created. So what creates the fact issue about whether the replacement woman was potentially present? There's no evidence that she was pregnant. And aside from that, there's another avenue there as well in that fourth element, which is you can show comparators. It doesn't have to be the replacement alone. You mentioned, Judge Southwick, that the seller statement was a year later, but in the email that she sent at the time, she explicitly used the word approval. She said, I'm worried. I'm sending this email because I'm worried that Lawaza is going to be disciplined for something that I approved. So that wasn't just something she came up with a year later. That was said at the time. But that email contains an explanation of why she approved it. And I think it is not beneficial to your case because it is implicitly saying, basically, that Lawaza told me it was all right by referring to California. To the extent that a subordinate could manipulate the supervisor, I suppose that's true. But the cases that I cited earlier, Laxon versus Gap and Eos, sorry, the cases I cited earlier, Hindson and Hare, they involve similar facts. It's supervisor approval, that word approval is used directly by sellers. I think that's enough. I want to get to Laxon v. Gap and EEOC versus Ryan's point because it touches on the coverage issues that you mentioned. Those facts were also very similar. In Laxon versus Gap, the employee was taking maternity leave and the supervisor became upset and was really upset because he didn't have someone to fill in for that employee during the busy holiday season. Ryan's point, the supervisor was upset because she was going to take the full allotment of FMLA leave. Tupper's concern here was similar, and I'm not trying to overstate these comments and say they're direct evidence, but Tupper's concern here was similar. He was concerned with the length of Loaza's leave and he was concerned with coverage issues. Keep in mind, because of her leave, she would have been out during Whole Foods' busy holiday season as well. As I see my time expiring, any last questions? Why don't you give us the last word? I ask that this court reverse the grant of summary judgment because a reasonable fact finder could find in favor of Loaza. All right. Counsel, you both have helped us on this case. Appreciate your being here. That is the end of today's session. We are recessed until tomorrow at 9 a.m. All rise.